# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8875 | DATE | 7/15/2002 |
| CASE TITLE | Christen Spahn, et al. vs. International Quality & Productivity Center, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing is set for 8/1/02 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [6-1] is denied. A status hearing is set for August 1, 2002.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | JUL 16 2002 date docketed |
| Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | docketing deputy initials |
| Mail AO 450 form. | |
| Copy to judge/magistrate judge. | |
| courtroom deputy's initials | date mailed notice |
| Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTEN SPAHN, MELISSA SCHNEIDER, and MELANIE PELOUZE, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 01 C 8875<br>) |
| v. | )<br>) |
| INTERNATIONAL QUALITY & PRODUCTIVITY CENTER ("IQPC"), and DAVID DE SANTO, an individual, | )<br>) Judge Joan B. Gottschall<br>)<br>) |
| Defendants. | ) |

**DOCKETED**
**JUN 1 6 2002**

## MEMORANDUM OPINION & ORDER

Christen Spahn, Melissa Schneider, and Melanie Pelouze pursue this employment discrimination case against their former employer, International Quality & Productivity Center ("IQPC"), and David DeSanto, a Managing Director at IQPC. The complaint asserts eighteen counts, six per plaintiff.[1] Defendants move to dismiss three counts. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Spahn, a former Delegate Sales Representative with IQPC, alleges that during her employment from February 2000 to December 2000, she experienced sexual harassment and an offensive and hostile work environment. Specifically, she claims that, among other things, DeSanto subjected her to offensive and inappropriate sexual comments, unwelcome sexual advances, unwanted touching such as rubbing her shoulders and patting her on the back, arbitrary threats, and humiliation in front of her peers and co-workers about purported poor job performance. When Spahn informed DeSanto that his actions made her uncomfortable, he responded, "Well, that's just the way I am . . . a real 'hands-on' manager." (Compl. ¶ 58.) Spahn alleges that on September 15, 2000, she complained to higher management about DeSanto's

---

[1] Although the counts go to up XIX, there is no Count XVI.

conduct; however, IQPC did not take any remedial action. Instead, the company retaliated against her by holding her to higher standards of performance than similarly situated employees, and then by constructively discharging her. Based on these allegations, Spahn brings six claims: sexual harassment in violation of Title VII against IQPC (Count I), sex discrimination in violation of Title VII against IQPC (Count II), retaliation in violation of Title VII against IQPC (Count III), common law battery against DeSanto (Count IV), common law assault against DeSanto (Count V), and intentional infliction of emotional distress against both defendants (Count VI).

Schneider, a Marketing Manager for IQPC from May 2000 to December 2000, alleges that during her employment she was also subjected to sexual harassment and a hostile work environment. Among other things, she claims that DeSanto subjected her to unwanted sexual advances and touching, and offensive and inappropriate sexual comments, including frequent comments that she should "wear her hair down" instead of in a "ponytail." (*Id.* ¶ 102.) Other male IQPC employees made similar, unwanted advances. On December 6, 2000, IQPC's in-house counsel, Brooke Shannon, questioned her about Spahn's complaints, whereupon Schneider told Shannon that DeSanto had sexually harassed her. Schneider claims that six days after complaining to IQPC she was terminated. Based on these allegations, Schneider brings six claims which mirror Spahn's.

Pelouze, a Conference Director for IQPC from July 2000 to December 2000, alleges that during her employment she was subjected to a hostile, offensive, and discriminatory work environment. Pelouze alleges that she was told on numerous occasions by IQPC supervisors that she was acting "bitchy" and that she should "use [her] womanly ways" to perform her job. (*Id.* ¶ 119.) These supervisors also referred to her and others, including Spahn and Schneider, as "the bitchy sorority girls." (*Id.* ¶ 131.) On numerous occasions, DeSanto subjected Pelouze to unwanted touching, including patting her on the back and rubbing her shoulders. Pelouze further alleges that because she was friendly with Spahn and Schneider, she was pressured by IQPC into

2

discussing any conversations she had with Spahn regarding her complaint about DeSanto. Nine days after these discussions, Pelouze was terminated. Based on these allegations, Pelouze brings six claims, which again parallel the claims brought by Spahn and Schneider.

## II. ANALYSIS

Defendants move to dismiss counts VI, XII, and XIX, each plaintiff's intentional infliction of emotional distress ("IIED") claim against IQPC and DeSanto. First, defendants argue that Illinois state law preempts these claims and that, therefore, this court lacks subject matter jurisdiction. Alternatively, defendants contend that the IIED claims must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Because neither argument has merit, the motion to dismiss is denied.

### A. Preemption

Defendants argue that plaintiffs' IIED claims are preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/8-111(C), and therefore must be dismissed for lack of subject matter jurisdiction. An Illinois state tort claim is preempted by the IHRA only if it is "inextricably linked" to a civil rights violation, such that there is no independent basis for the tort claim apart from legal duties created by the IHRA. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23-24 (Ill. 1997). If Illinois state courts lack jurisdiction to hear an Illinois tort claim, so does a federal district court sitting in Illinois. *Thomas v. L'Eggs Prods., Inc.*, 13 F. Supp. 2d 806, 808 (C.D. Ill. 1998). Because defendants challenge the sufficiency, not the substance, of plaintiffs' allegations with respect to jurisdiction, the facts alleged in the complaint must be accepted as true. *See Family & Children's Ctr. v. Sch. City*, 13 F.3d 1052, 1059 (7th Cir. 1994); *cf. Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980) ("Where the defendant raises factual questions concerning jurisdiction, the court need not accept the allegations of the complaint as true; the court may look behind the complaint and view the evidence to determine whether a controversy in fact exists.").

Recent decisions from this district have held that the IHRA did not preempt comparable

3

IIED claims. In *Adan v. Solo Cup, Inc.*, No. 01 C 3966, 2001 U.S. Dist. LEXIS 12726, at *3-10 (N.D. Ill. Aug. 17, 2001), the court held that unwelcome sexual advances, unwelcome comments containing sexual innuendos, and repeated requests and propositions for sexual behavior by plaintiff's supervisor supported an IIED claim independent of any legal duties created by the IHRA. In *Figueroa v. City of Chicago*, No. 97 C 8861, 2000 U.S. Dist. LEXIS 3141, at *37 n.5 (N.D. Ill. Mar. 1, 2000), the court found that an IIED claim based on allegations of repeated unwanted sexual advances, suggestive comments, and adverse consequences should the plaintiff report the conduct was not preempted by the IHRA. In *Rapier v. Ford Motor Co.*, 49 F. Supp. 2d 1078, 1080 (N.D. Ill. 1999), the court found that unwanted touching by an employer was a common law tort independent of civil rights law.[2]

The IIED claims in *Adan*, *Figueroa*, and *Rapier* are essentially indistinguishable from the IIED claims in this case. Spahn, Schneider, and Pelouze each allege incidents of inappropriate and offensive sexual comments, unwelcome and unwanted sexual advances, and numerous occasions of harmful and offensive touching by their superior. The outrageousness of such behavior predated enactment of the IHRA. Offensive touching in particular could rise to the level of extreme and outrageous conduct wholly apart from any sexual motivation or content: repeatedly pulling the ponytail of a male employee in front of co-workers, for example, could very well support an IIED claim. *Cf. Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000) (finding preemption because the plaintiff's emotional distress claim was based on comments that "were only offensive to the extent they referred to [plaintiff's] disability"). Based on the complaint, it appears that plaintiffs may be able to prove the elements of IIED without relying on any legal duties created by the IHRA. Defendants' motion to dismiss the IIED claims for lack of subject matter jurisdiction is therefore denied.

---

[2]Notably, the court in *Bruce v. South Stickney Sanitary District*, No. 01 C 3578, 2001 U.S. Dist. LEXIS 9815, at *10 (N.D. Ill. July 11, 2001), observed that "[o]ur independent survey of the current case law indicates that claims for [IIED] are generally not preempted by the IHRA where there is an underlying sexual harassment claim."

4

As a fallback, defendants observe that each plaintiff's IIED claim incorporates the factual allegations underlying her Title VII claim. This observation is of no help to defendants for several reasons. First, although there are substantial areas of overlap, Title VII imposes legal duties independent of the IHRA. Unless defendants can show that plaintiffs' Tile VII claims fall in the area of overlap, which they make no attempt to do here, the Title VII claims are irrelevant. IHRA preemption is a creature of state, not federal, law. Second, plaintiffs' IIED claims also incorporate the factual allegations underlying their battery and assault claims. These common law torts obviously predate and are independent of the civil rights laws, state and federal. Third, and most fundamentally, "it does not matter that the conduct giving rise to the tort claim could also support an IHRA claim." *Jackson v. Local 705 Int'l Bhd. of Teamsters*, No. 95 C 7510, 2002 U.S. Dist. LEXIS 4908, at *47 (N.D. Ill. Mar. 22, 2002) (hereinafter "*Local 705*"). Defendants' reliance on *Maksimovic* for the opposite proposition is wholly misplaced. That case makes perfectly clear that the critical analysis focuses on legal duties, not facts. *See Maksimovic*, 687 N.E.2d at 24 ("A legislative intent to abolish all common law torts factually related to sexual harassment is not apparent from a plain reading of the statute."). In fairness to defendants, it should be observed that some courts in this district have made the same mistake. *See, e.g., Westphal v. City of Chicago*, 8 F. Supp. 2d 809, 811-12 (N.D. Ill. 1998). The source of the confusion is apparently *Geise v. Phoenix Co.*, 639 N.E.2d 1273 (Ill. 1994). Before the Illinois Supreme Court clarified the legal standard in *Maksimovic*, even the Seventh Circuit was confused. *See Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 493 (7th Cir. 1997) (en banc) (per curiam) ("[Plaintiff]'s common law claim of infliction of emotional distress is supported by the identical factual allegations of her Title VII claims and is therefore pre-empted.").

## II. Failure to State a Claim

On a Rule 12(b)(6) motion, a court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The court assumes the truth

of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). Under the federal system of notice pleading, "although plaintiffs can plead conclusions, the conclusions must provide the defendant with at least minimal notice of the claim." *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995).

Defendants argue that plaintiffs' IIED claims should be dismissed for failure to state a claim. To establish an IIED claim under Illinois law, a plaintiff must prove that: (1) the conduct involved was "truly extreme and outrageous"; (2) the defendants intended for their conduct to inflict severe emotional distress or should have known that there was a high probability of such distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Conduct is extreme and outrageous where "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46, cmt. d, at 73 (1965)).

Defendants challenge the sufficiency of plaintiffs' allegations only as to this first element. In support of their attack, defendants rely on an incorrect proposition of law: Illinois courts require a higher standard of outrageousness in an employment relationship than in other contexts. One of the opinions cited by defendants, however, includes language that directly contradicts this proposition, at least with respect to the conduct of a superior. In *Piech v. Arthur Andersen & Co.*, 841 F. Supp. 825, 831 (N.D. Ill. 1994), the court stated that "[w]hen, as here, the defendant has some degree of power over the plaintiff, the severity of the conduct that plaintiff need allege *decreases* as the defendant's level of control increases." *Id.* at 831 (emphasis added). More important, the Illinois Supreme Court has since held that an "abuse of position of power," such as that of an employer over an employee, lowers the outrageousness hurdle. *Doe*, 641 N.E.2d at 507; *see also* Restatement (Second) of Torts § 46, cmt. e. This authoritative statement of Illinois law postdates the other decisions cited by defendants, *Pudil v. Smart Buy, Inc.*, 607 F. Supp. 440,

444 (N.D. Ill. 1985), and *Carpenter v. Ford Motor Co.*, No. 90 C 5822, 1991 U.S. Dist. LEXIS 1613, at *4 (N.D. Ill. Feb. 8, 1991). *See generally Local 705*, 2002 U.S. Dist. LEXIS 4908, at *51-52 (holding that there is no higher standard of outrageousness in the employment context). The fact that an IIED claim is predicated on misconduct in the workplace does *not* mean that the plaintiff must show a heightened level of outrageousness.

Defendants' next argument is better, but ultimately unconvincing. They argue that courts applying Illinois law have limited "outrageous" employer conduct to either attempted coercion to commit a crime or sexual misconduct significantly more egregious than the sexual misconduct alleged by plaintiffs. To illustrate, defendants offer three cases from this district dismissing IIED claims for lack of sufficiently outrageous conduct: *Chishom v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1286 (N.D. Ill. 1996), *Miles v. LaSalle Financial Services*, No. 93 C 1660, 1995 U.S. Dist. LEXIS 14575, at *11-15 (N.D. Ill. Oct. 3, 1995), and *Holmes v. Razo*, No. 94 C 50405, 1995 U.S. Dist. LEXIS 10599 (N.D. Ill. Jul. 18, 1995).[3] *Chisholm* and *Miles*, however, are distinguishable: the conduct alleged in each of those cases was limited to instances of employment discrimination and retaliation, whereas plaintiffs here additionally allege sexual harassment, battery, and assault. The *Holmes* decision is less readily distinguishable, but this court finds the reasoning of other closely analogous cases to be more persuasive. *See, e.g., Adan*, 2001 U.S. Dist. LEXIS 12726, at *12; *Warnell v. Ford Motor Co.*, No. 98 C 1503, 1998 U.S. Dist. LEXIS 16952, at *7 n.2 (N.D. Ill. Oct. 21, 1998); *Reich v. Ruff*, 837 F. Supp. 881, 885 (N.D. Ill. 1993). In each instance, the court held that the allegations of sexual harassment, assault, battery, discrimination, and retaliation sufficed to state a claim for IIED. As in those cases, it is impossible to say that plaintiffs here will be unable to prove any set of facts consistent with the complaint which could support a finding of extreme and outrageous conduct. *See Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990) (finding sexual harassment by

---

[3]The defendants also discuss *Miller v. Equitable Life Assurance Society*, 537 N.E.2d 887 (Ill. App. Ct. 1989). However, Illinois is a fact-pleading jurisdiction, so this decision has little persuasive force.

7

employer to be extreme and outrageous).

Drawing all inferences in favor of the plaintiff, the misconduct alleged by Spahn, Schneider, and Pelouze may rise to the requisite level of egregiousness. Plaintiffs allege inappropriate and offensive sexual comments, unwelcome and unwanted sexual advances, and numerous occasions of harmful and offensive touching by their superior, defendant DeSanto. Plaintiffs further allege that IQPC knew of the sexual harassment and discrimination and, in response to complaints, retaliated by raising performance standards or directly discharging each plaintiff.[4] These allegations satisfy the outrageous conduct element of an IIED claim in a notice pleading regime. Plaintiffs may be unable to adduce facts consistent with the complaint that would lead an average member of the community to exclaim, "Outrageous!" Defendants' motion to dismiss is therefore denied.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 15, 2002

---

[4]Spahn claims both heightened standards and constructive discharge; Pelouze and Schneider claim actual retaliatory discharge.